THE HONORABLE RONALD B. LEIGHTON

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FRANK "JOE" MENDEZ, an individual, on behalf of himself and others similarly situated; DONALD MAX KIMBALL, an individual, on behalf of himself and others similarly situated; and SIA GOULD, an individual, on behalf of herself and others similarly situated,

                    Plaintiff,

vs.

STEELSCAPE WASHINGTON, LLC, a Washington limited liability company; and STEELSCAPE, LLC, a foreign limited liability company,

                    Defendants.

**CLASS ACTION**

CASE NO. 3:19-cv-05691-RBL

**AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF**

## I.    INTRODUCTION

1.1    Plaintiffs Frank "Joe" Mendez ("Mendez"), Donald Max Kimball ("Kimball") and Sia Gould ("Gould") (collectively referred to herein as Representative Plaintiffs), by and through their attorneys of record, HKM Employment Attorneys LLP, on behalf of themselves and others similarly situated, hereby alleges claims for unpaid wages, financial damages, interest and penalties, exemplary damages, attorneys' fees and costs, in

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 1

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

addition to injunctive and other relief on behalf of those employees of Defendants Steelscape Washington, LLC, and Steelscape, LLC (collectively referred herein as "Steelscape" or "Defendants"), who are owed compensation that has been earned but unpaid, undistributed, or otherwise wrongfully withheld by the employer.

1.2    Mendez, Kimball and Gould allege these claims, on behalf of themselves and other similarly situated employees, based on Steelscape's unilateral decision to alter its compensation plan when the employees and, therefore the company overall, were performing exceptionally well.  As a result of the employees' high productivity and the favorable sales of Steelscape's products, the employees earned and were scheduled to receive significant bonus compensation under Steelscape's performance compensation plan.  Steelscape knew of the projected payout obligations to its employees and, to avoid payment of additional compensation to Representative Plaintiffs and the other employees, Steelscape unilaterally altered the compensation formula to the detriment of the employees.

1.3    Defendants subjected Mendez, Kimball and Gould, and those similarly situated, to a loss of income that they earned, and were projected to continue earning, as a result of their high productivity and the favorable product sales.  Defendants failed to pay Mendez, Kimball and Gould, and those similarly situated, wages they earned under Defendants' compensation formula.  In doing so, Steelscape willfully withheld wages that are due and owing to its employees.

## II.  PARTIES

2.1    Plaintiff Frank "Joe" Mendez is an individual residing in Cowlitz County, Washington.  He worked for Steelscape at its manufacturing facility located in Cowlitz County, Washington.  At all times material hereto, Mendez worked as bonus-eligible employee in the position of Paint Line Operator on a manufacturing line.

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 2

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

2.2     Plaintiff Donald Max Kimball is an individual residing in Cowlitz County, Washington.  Kimball currently works for Steelscape at its manufacturing facility located in Cowlitz County, Washington, in the position of Quality Technical Assistant-East.  At all times relevant to the claims asserted herein, Kimball worked as a bonus-eligible employee in the position of Slitter Operator on a manufacturing line.

2.3     Plaintiff Sia Gould is an individual residing in Cowlitz County, Washington.  Gould currently works for Steelscape at its manufacturing facility located in Cowlitz County, Washington, in the position of Paint Line Operator.  At all times material hereto, Gould worked as a bonus-eligible employee in the positions of Paint Line Operator, Material Control and back-up Paint Line Operator on a manufacturing line.

2.4     Defendant Steelscape Washington, LLC, is a Washington corporation that is duly licensed and registered to do business in the State of Washington, operating under UBI No. 603 070 817.  Steelscape Washington conducts business and manufacturing operations from its headquarters in Kalama, Washington.

2.5     Defendant Steelscape, LLC, is a foreign limited liability company that is duly licensed and registered to do business in the State of Washington, operating under UBI No. 601 330 738.  Upon information and belief, Steelscape, LLC, is the parent company of Steelscape Washington, LLC.

2.6     Defendants controlled the terms and conditions of employment for Mendez, Kimball and Gould, and those employees similarly situated.  Upon information and belief, Steelscape, LLC, controlled or influenced the decisions of Steelscape Washington, LLC, to alter its compensation formula, thereby reducing the payout of bonus compensation that the employees had earned, or were scheduled to earn.

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 3

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

### III.  JURISDICTION AND VENUE

3.1     The Court has jurisdiction over this action because the claims in this case arise under Washington law.

3.2     This Court has jurisdiction because Defendants removed this action from the Cowlitz County Superior Court to the United States District Court for the Western District of Washington pursuant to 28. U.S.C. § 1332(d), the Class Action Fairness Act.  (Dkt. No. 1).

3.3     At all times material hereto, Defendants conducted business in Washington within the jurisdiction of the United States District Court for the Western District of Washington at Tacoma.  Steelscape employs all putative class members in Cowlitz County, and the unlawful acts alleged herein have a direct impact on the individuals who work and live in the State of Washington.  Defendants further controlled the terms and conditions of the Representative Plaintiffs' employment when working at the Steelscape business location within the boundaries of the United States District Court for the Western District of Washington at Tacoma.

3.4     The United States District Court for the Western District of Washington has jurisdiction to adjudicate the claims of the putative class under the authority of F.R.C.P. 23.

3.5     This action has been filed within the applicable statutory time periods.

3.6     Jurisdiction and venue are proper.

### IV.  FACTS

4.1     Defendants Steelscape operate a manufacturing facility in Kalama, Washington, where the companies employ a large workforce.  Steelscape is a national supplier of metallic-coated and pre-painted metal.  With a highly skilled and knowledgeable workforce, Steelscape has a unique ability to process hot band coil into a final metal building product that is produced in accordance with customer design specifications.  Performing the entire manufacturing process in the same facility, including

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 4

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

the coating process, allows Steelscape to produce high-grade, market-ready metal building products in a manner that best maintains consistency and quality.

4.2     Steelscape employs persons to perform various tasks on its manufacturing line during several shifts, including and not limited to, maintenance, paint, slitter, cold mill, pickling and material control.  At all times relevant to the claims alleged herein, Representative Plaintiffs Mendez and Gould worked on the Paint Line, and Kimball worked as a Slitter Operator at Steelscape's manufacturing facility.  Representative Plaintiffs and the Class Members are all hourly employees that perform manufacturing tasks to produce fabricated metal building products, such as roofing, siding and other architectural metal applications.  Representative Plaintiffs and the Class Members were all eligible for performance incentive pay under the employer's compensation plan at issue in this case.

4.3     Between 1997 and 2013, Steelscape provided to Representative Plaintiffs and the Class Members a company-sponsored 401k retirement savings plan that included a 6% employer matching contribution.  In or around March 2013, Steelscape informed its employees of a change to the retirement program.  At a meeting led by Vice President of Operations, Don Pilger, and Vice President for Human Resources, Gemma Curci, Steelscape announced that it needed to amend the retirement program, allegedly for IRS compliance purposes.  As a result, for the employees who participated in the 401k retirement savings program, the matching employer contribution was reduced from 6% to 3%.  The 6% matching contribution was a benefit available to employees at the Kalama plant since 1997.  The 3% reduction, announced in March 2013, was a significant change that resulted in a negative long-term financial consequence for the participating employees.

4.4     To stem the tide of employee disappointment and dissatisfaction with the sizeable reduction of the 401k retirement savings benefit, Steelscape implemented a new compensation plan entitled "Bridgespan 5/25."  Steelscape promoted Bridgespan 5/25, in

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 5

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1    part, as a defined compensation formula that could potentially mitigate the 3% loss of

2    matching employer 401k retirement contributions.  Bridgespan 5/25, as promised by

3    Steelscape, was a 5-year compensation plan based on financial targets of Earnings Before

4    Income Tax ("EBIT"), which provided the opportunity for significant bonus compensation

5    based on defined criteria.  Steelscape defined the Bridgespan 5/25 participants as all

6    employees that did not otherwise participate in a managerial or other

7    incentive/commission-type plan, and those employees that are not designated as

8    temporary/contract workers.

9         4.5     Upon information and belief, Steelscape operates on a fiscal year ("FY")

10   annual cycle that begins on July 1 and ends on June 30.  The Bridgespan 5/25 plan was to

11   follow that fiscal year calendar.  Bridgespan 5/25 began on July 1, 2013, and ended its first

12   fiscal year (FY 14) on June 30, 2014.

13        4.6     When Steelscape implemented Bridgespan 5/25, the company provided its

14   employees a comprehensive, in-person PowerPoint presentation on the performance

15   compensation plan.  Representatives received and answered employee questions about the

16   plan.  The employees were very interested in the potential for earnings under Bridgespan

17   5/25 due to the contemporaneous 3% reduction in the employer matching contribution to

18   the 401k retirement benefit.  Steelscape communicated the following through its

19   presentation to the employees:  **If the Company achieves its combined EBIT target,**

20   **employees will receive a payment of 6% of their annual base salary.  For every $1**

21   **million the company makes above the combined EBIT target, employees will receive**

22   **an additional 1% of their annual base salary.**  Bridgespan 5/25 offered a compensation

23   formula that was definite, certain and non-discretionary.  Steelscape did not designate

24   Bridgespan 5/25 as a discretionary bonus plan or otherwise reserve the right to alter or

25   revoke the compensation plan.  Steelscape also did not place any cap on the earnings that

26   the employees could receive under Bridgespan 5/25, as the plan was promoted to make up

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 6

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1  for the perceived losses from the retirement plan.  At the time of providing Bridgespan 5/25

2  to the employees, Steelscape knew or should have known that its employees reasonably

3  relied on the performance compensation plan, and all representations Steelscape made

4  about the plan, to the employees' detriment.

5        4.7     Lacking familiarity with the workings of Bridgespan 5/25, the employees

6  repeatedly inquired of Steelscape about the limits of the compensation plan, including

7  whether there existed any limit on the additional compensation owed when EBIT target

8  thresholds were met and exceeded.  At all times, Steelscape reassured the employees that

9  no cap on potential additional compensation existed.  To test whether the compensation

10  plan was truly uncapped, the employees discussed with Steelscape what they regarded as

11  wild and crazy "what if" earnings scenarios.  Steelscape again reassured the employees

12  that, for a period of 5 years, no cap would limit their ability to earn additional income for

13  exceeding EBIT targets.  When providing such reassurances to its workforce, Steelscape

14  knew or should have known that its employees reasonably relied on the compensation plan

15  information to their detriment.

16        4.8     The employees and management continued to discuss the administration of

17  Bridgespan 5/25 and the eligibility of employees to receive additional compensation under

18  the plan.  On or about January 12, 2014, the employees participated in a roundtable

19  discussion with management representatives regarding Bridgespan 5/25.  On January 16,

20  2014, Evan Dille, who was then Manager of Material Control, provided an email to a group

21  of employees stating, "2. Is there a cap on the annual bonus? a. Answer: No."  Similarly, on

22  December 13, 2016, Mike Buckentin, Vice President of Steelscape, responded to an inquiry

23  by stating, "I think it is accurate to say that last year there was not a cap on the annual

24  EBIT part of the bonus plan."  Steelscape knew or should have known that Representative

25  Plaintiffs, and those employees similarly situated, reasonably relied on these

26  representations to their detriment.

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF (CLASS ACTION)
(3:19-cv-05691-RBL) – 7

4.9     Steelscape and its employees, including Representative Plaintiffs and the Class Members, achieved the EBIT goal for FY 14 (July 1, 2013 through June 30, 2014). Steelscape then distributed the earned non-discretionary bonus compensation or around September 5, 2014. Upon information and belief, each eligible employee received additional compensation in the amount of 7% of their respective annual compensation for FY 14.

4.10     During FY 15 (July 1, 2014 through June 30, 2015), Steelscape took advantage of favorable market conditions and used its available cash to purchase significant quantities of surplus manufacturing materials. Consequently, Steelscape's employees did not hit their EBIT targets for FY 15. Representative Plaintiffs and the Class Members did not receive any additional performance incentive compensation under Bridgespan 5/25 for FY 15.

4.11     Steelscape and its employees, including Representative Plaintiffs and the Class Members, met and exceeded the EBIT goal for FY 16 (July 1, 2015 through June 30, 2016). Pursuant to Bridgespan 5/25, each eligible employee received additional compensation in the amount of 9% of their respective annual compensation for FY 16. Upon information and belief, Steelscape paid this earned performance incentive bonus on or around September 15, 2016.

4.12     Bridgespan 5/25 for FY 17 ran from July 1, 2016 through June 30, 2017. On or about January 1, 2017, mid-way through FY 17, Steelscape recognized the company was experiencing a blockbuster year. Due to then-current market conditions and the prior acquisition of surplus manufacturing materials, Steelscape was performing exceptionally well. Based on sales and revenues figures, Steelscape knew that, by January 2017, its workforce had already exceeded greatly the required EBIT target for the full fiscal year. To avoid paying Representative Plaintiffs and the Class Members sizeable performance compensation owed to them under Bridgespan 5/25, Steelscape unilaterally revised the

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 8

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1  plan.  On January 24, 2017, Brenden Brophy, Operations Manager for Steelscape,

2  announced an amendment to the Bridgespan 5/25 compensation formula for FY 17.  Mr.

3  Brophy informed Representative Plaintiffs and the Class Members that they would "receive

4  a payment of 6% of their annual base salary for achieving the EBIT target," and that a

5  "maximum amount achievable when EBIT results are exceeded is 6%."  Effectively,

6  Steelscape capped the additional performance incentive compensation at 12% of each

7  eligible employee's annual compensation.  Steelscape imposed this cap mid-way through

8  FY 17, and, upon information and belief, only *after* Steelscape's financial reporting

9  indicated that Representative Plaintiffs and the Class Members had earned additional

10  compensation at a rate above the new 12% cap.  But for the imposition of a bonus cap that

11  Steelscape previously promised would not happen, Representative Plaintiffs and the Class

12  Members would have earned performance compensation greatly in excess of 12%.

13         4.13    At the start of FY 18 – the purported final year of Bridgespan 5/25,

14  Steelscape again altered the performance compensation plan on or about July 14, 2017.

15  This plan amendment eliminated reference to Bridgespan 5/25 and simply referred to the

16  plan amendment as "Bonus Pay for Performance" (BPP).  Although the new BPP

17  compensation plan allowed for bonus above 12%, Steelscape drastically reduced the

18  potential bonuses for eligible employees.  Upon information and belief, Representative

19  Plaintiffs and the Class Members earned 13.7% under this new plan.  But for the imposition

20  of the new BPP compensation plan in the fifth year of Bridgespan 5/25, Representative

21  Plaintiffs and the Class Members would have earned performance compensation greatly in

22  excess of the 13.7% bonus.

23         4.14    Defendants engaged in practices and policies that deprived Representative

24  Plaintiffs and the Class Members of wages that were earned and owed under Bridgespan

25  5/25.  Steelscape amended the performance incentive compensation formula in FY 17 and

26  FY18 without lawful authority during a particularly prosperous period.  Steelscape initiated

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF (CLASS ACTION)
(3:19-cv-05691-RBL) – 9

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1  the compensation change for its own benefit and to the detriment of Representative

2  Plaintiffs and the Class Members.

3      4.15    Defendants intentionally deprived Representative Plaintiffs and the Class

4  Members of wages earned in FY 17 under the original Bridgespan 5/25 plan, which were

5  due and owing to them on or about September 2017.  Defendants further intentionally

6  deprived Representative Plaintiffs and the Class Members of wages earned in FY 18 (July

7  1, 2017 through June 30, 2018) under the original Bridgespan 5/25 plan, which were due

8  and owing to them on or about September 2018.  As a direct and consequential result of

9  Defendants' conduct, Representative Plaintiffs and the Class Members sustained damages

10  in the form of lost earnings and other financial losses that accrued during and following the

11  completion of FY 17 and FY 18.

12      4.16    Defendants acted willfully and with the intent to deprive Representative

13  Plaintiffs and the Class Members, all of whom were eligible production line workers, of

14  wages they did earn, and/or would have earned, under Bridgespan 5/25, but for

15  Defendants' willful withholding and unauthorized breaches.

16

17                          **V.  CLASS ALLEGATIONS**

18      5.1    Representative Plaintiffs bring this action on their own behalf, as well as on

19  behalf of all other similarly situated employees.

20      5.2    Plaintiffs' proposed class is defined as follows:

21        All current and former employees who worked for Steelscape in Kalama,
          Washington, at any time within the period beginning three (3) years prior to
22        the filing of this Complaint to the date of certification of the claim, and who
          were otherwise eligible to receive payment under the performance incentive
23        compensation formula known as Bridgespan 5/25.

24

25

26

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 10

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

All members of the putative class are referred to herein as "Class Members." As used in this Complaint, the term "relevant time period" is from three (3) years prior to the filing of the original Complaint until certification of the class in this lawsuit.

5.3    As enumerated above, Defendants Steelscape engaged in common acts, practices, polices, breaches and misrepresentations that violated the rights of Representative Plaintiffs and the Class Members under Washington State wage and hour laws and common laws. Accordingly, Representative Plaintiffs seeks certification of the proposed class under F.R.C.P. 23 and the Washington equivalent, CR 23, to the extent that it applies.

5.4    Representative Plaintiffs' claims meet the requirements for certification. There is a well-defined community of interest in the litigation and the Class Members are readily ascertainable.

 a.    <u>Numerosity</u>:  The Class is so numerous that joinder of all Class Members is infeasible and impractical.  The identity of each proposed member of the class is unknown at this time.  However, based on Plaintiff's investigation, and upon information and belief, the number of Class Members is reasonably estimated to exceed 150 current and former employees, including workers with documented work hours on a manufacturing line during various shifts, that were eligible under the bonus plan at issue.  The identity of the Class Members is readily ascertainable from the employment records of Defendants Steelscape.

 b.    <u>Typicality</u>:  Plaintiffs' claims are typical of those of the other Class Members because:

  i.    Plaintiffs are members of the class.  Plaintiff Mendez was an hourly, non-exempt employee who worked as a production worker on the Paint Line of Steelscape's manufacturing facility.  Plaintiff Kimball remains an employee with

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 11

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1   Steelscape who worked as an hourly, non-exempt employee

2   as a Slitter Operator in Steelscapes's manufacturing facility

3   at the time of the events that give rise to this Complaint.

4   Plaintiff Gould remains an employee with Steelscape as an

5   hourly, non-exempt employee who worked as a production

6   worker on the Paint Line of Steelscape's manufacturing

7   facility at the time of the events that give rise to this

8   Complaint.

9   ii.     Plaintiffs' claims stem from the same practices or course of

10          conduct that form the basis of the class claims.

11  iii.    All the of the Class Members' claims are based on the same

12          facts and legal theories.

13  iv.     There is no antagonism between Representative Plaintiffs'

14          interests and those of the Class Members because their claims

15          are for damages provided to each individual employee by

16          statute and under the same compensation formula.

17  v.      The injuries that Representative Plaintiffs suffered are similar

18          to the injuries that the Class Members suffered and continued

19          to suffer, and they are relatively small compared to the

20          expenses and burden of prosecuting the claims of each

21          individual Class Member.

22  c.   Adequacy:  Representative Plaintiffs will fairly and adequately

23  protect the interests of the Class because;

24  i.      There is no conflict between the Representative Plaintiffs'

25          claims and those of the other Class Members.

26

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 12

1    ii.    Representative Plaintiffs acknowledge that they have an

2    obligation to make known to the Court any relationship,

3    conflicts or differences with any Class Member.

4    iii.    Representative Plaintiffs agree to actively participate in the

5    case and protect the interests of the putative Class Members.

6    iv.    Representative Plaintiffs retained counsel experienced in

7    handling wage and hour class actions who have already

8    devoted substantial time and resources toward investigating

9    the Class Members' claims and who will vigorously

10    prosecute this litigation.

11    v.    Representative Plaintiffs' claims are typical of the Class

12    Members in that their claims stem from the same practice and

13    course of conduct that form the basis of the class claims.

14    d.    Superiority:  Class action adjudication is superior to other methods

15    of adjudication for at least the following reasons:

16    i.    The common questions of law and fact described above and

17    below predominate over questions affecting only individual

18    members, and the questions affecting individuals primarily

19    involved calculations of individual damages.

20    ii.    The prosecution of separate actions by the Class Members

21    could either result in inconsistent adjudications establishing

22    incompatible pay practices or, as a practical matter, dispose

23    of the legal claims of Class Members who are not parties to

24    such separate adjudications.

25    iii.    Individual Class Members could have little interest in

26    controlling the litigation due to the relatively small size of

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 13

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1    most claims, and because the Representative Plaintiffs and

2    their attorneys will vigorously pursue the claims on behalf of

3    the Class Members.

4        iv.    A class action will be an efficient method of adjudicating the

5    claims of the Class Member employees.

6        e.    <u>Public Policy Considerations</u>:  Defendants purposely altered their

7    compensation formula to deprive employees of compensation owed, thereby having

8    willfully violated Washington law governing employee compensation and other

9    employment laws.  The value of each individual employee claim is often small as

10   compared with the relative cost of litigation.  Class actions provide putative Class

11   Members who are not named in the Complaint with a type of anonymity that allows

12   for the vindication of their rights while, at the same time, protection of their

13   privacy.

14       f.    <u>Predominance</u>:  There are questions of law and fact common to the

15   Class Members that predominate over any issues involving only individual class members,

16   including but not limited to:

17       i.    Whether Defendants failed to pay Class Members all

18   compensation owed under the Bridgespan 5/25 plan, based

19   on criteria of annual base salary and company performance,

20   among other factors.

21       ii.    Whether Defendants promised to the Class Members that

22   Steelscape would refrain from capping the bonus

23   compensation earned by the Class Members.

24       iii.    Whether Defendants wrongfully altered the Bridgespan 5/25

25   compensation plan unilaterally, and did so in the middle of

26   the fiscal year, in order to reduce the payment of wages owed

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 14

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

to Class Members and to reap the revenues for their own

corporate interests.

iv.    Whether Defendants promised the terms of the Bridgespan

5/25 compensation plan to the Class Members, and did so

without a reservation to alter the plan in a unilateral fashion.

v.    Whether the Class Members earned compensation in excess

of the 12% cap in FY 17 that Defendants imposed

unilaterally midway through the compensation plan year.

vi.    Whether the Class Members earned compensation in excess

of the 13.7% bonus in FY 18 after Defendants implemented a

new Bonus Pay for Performance compensation plan in order

to avoid its obligations under Bridgespan 5/25.

vii.    Whether the Class Members are owed additional

compensation based on the Steelscape's promises in the

Bridgespan 5/25 compensation plan.

viii.    Whether Defendants wrongfully withheld wages owing to the

Class Members.

ix.    Whether Defendants' conduct was willful.

## VI.  CAUSES OF ACTION

**A.    FIRST CAUSE OF ACTION – Failure to Pay Wages, RCW 49.46 *et seq*.**

**(On behalf of Representative Plaintiffs in their individual capacities and on behalf of the Class Members.)**

6.1    Plaintiffs realleges paragraphs 1.1 through 5.4 of the Complaint and hereby incorporates the same by reference.

6.2    Representative Plaintiffs Mendez, Kimball, Gould and the Class Members performed work on the production line to become eligible under the Bridgespan 5/25

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 15

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1   compensation plan.  The production line hours of an employee equated to annual base

2   salary, and when combined with the EBIT target and other criteria under the compensation

3   plan, entitled the employees to additional compensation.  Defendants typically paid this

4   additional compensation in September after the close of each plan year.  Defendants

5   violated RCW 49.46 *et seq.* when they refused to provide the Representative Plaintiffs and

6   the Class Members all wages earned under the Bridgespan 5/25 compensation plan.

7        6.3    Defendants unilaterally altered Bridgespan 5/25 in the middle of the plan

8   year, on or about January 24, 2017, by placing a 12% cap on additional employee

9   compensation.  At the time of this unilateral change in the employer's promised

10  performance compensation plan, Representative Plaintiffs and the Class Members had

11  already met and exceeded the FY 17 EBIT target by a measure that would have paid them

12  well in excess of the 12% cap on compensation.  By capping additional compensation owed

13  under Bridgespan 5/25 at 12%, and applying that cap retroactively for the full FY 17,

14  Defendants deprived Representative Plaintiffs and the Class Members of wages earned and

15  owed to them for that fiscal year.  Additionally, by unilaterally altering the original plan

16  and limiting the additional compensation owed under the new Bonus Pay for Performance

17  plan for FY 18, Defendants deprived Representative Plaintiffs and the Class Members of

18  wages earned and owed to them for FY 18.  Representative Plaintiffs and the Class

19  Members earned performance incentive compensation well above the 13.7% bonus that

20  Defendants paid in FY 18.  The compensation owed under the Bridgespan 5/25 plan was

21  non-discretionary, defined, certain, capable of calculation and had been earned through the

22  dedicated performance of Representative Plaintiffs and the Class Members.

23       6.4    When imposing unilateral alterations to the performance incentive plan

24  during FY 17 and FY 18, Defendants did so with the intent to avoid the financial liability

25  of additional monies owed to Representative Plaintiffs and the Class Members for the

26  remainder of the original 5-year plan, Bridgespan 5/25.  Defendants took this action

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 16

without any reserved right of revocation or other privilege.  Defendants similarly violated RCW 49.46 *et seq*. when they refused to provide the Representative Plaintiffs and the Class Members all wages that were earned during the remainder of the Bridgespan 5/25 compensation plan.

6.5      As a result of Defendants' unilateral and unlawful alteration of the Bridgespan 5/25 compensation plan and the failure to pay wages earned and owed under that plan, Representative Plaintiffs Mendez, Kimball, Gould and the Class Members suffered damages in an amount to be proven at the time of trial.

**B.      SECOND CAUSE OF ACTION – Willful Withholding of Wages, 49.52 *et seq*.**
**(On behalf of Representative Plaintiffs in their individual capacities and on behalf of the Class Members.)**

6.6      Plaintiffs realleges paragraphs 1.1 through 6.5 of the Complaint and hereby incorporates the same by reference.

6.7      As alleged above, Representative Plaintiffs Mendez, Kimball, Gould and the Class Members performed work activities in FY 17 pursuant to the Bridgespan 5/25 plan, which Defendants wrongfully altered in order to avoid paying this compensation. Defendants refused to pay compensation that the employees had already earned at the time of the plan amendment on January 24, 2017, as Steelscape withheld owed compensation by capping the performance incentive pay at a rate of 12% of the eligible employee's annual base salary.  Defendants knew the employees were scheduled to receive performance incentive compensation of higher value and willfully withheld these earned wages in violation of RCW 49.52 *et seq*.

6.8      Representative Plaintiffs and the Class Members performed work activities in FY 17 and FY 18 pursuant to the Bridgespan 5/25 plan, which Defendants wrongfully altered in order to avoid paying this compensation.  Defendants refused to pay compensation that the employees were eligible to receive, but for Steelscape's alteration of

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 17

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1  the compensation formula, which occurred to benefit the company and to the detriment of

2  the eligible employees.  Defendants knew the employees were owed performance incentive

3  compensation of higher value and willfully withheld these earned wages in FY 17 and FY

4  18 in violation of RCW 49.52 *et seq*.

5      6.9     As a result of Defendants' willful withholding of wages, Representative

6  Plaintiff Mendez, Kimball, Gould and the Class Members suffered damages in an amount

7  to be proven at the time of trial, including double damages.

8  **C.     THIRD CAUSE OF ACTION – Breach of Contract**

9      **(On behalf of Representative Plaintiffs in their individual capacities and on
    behalf of the Class Members.)**

10

11      6.10    Plaintiffs realleges paragraphs 1.1 through 6.9 of the Complaint and hereby

12  incorporates the same by reference.

13      6.11    Following an announced 3% reduction of the 401k employer match,

14  Steelscape offered to its employees a compensation plan that suggested the potential of

15  covering this 3% loss in retirement savings.  The Bridgespan 5/25 plan was written and

16  presented to the employees without any reservation by the employer to alter or revoke the

17  compensation plan.  Bridgespan 5/25 consisted of a promise to the employees of non-

18  discretionary compensation terms that were definite and certain.  The employees accepted

19  Bridgespan 5/25 and their work under the compensation plan constituted adequate

20  consideration for a valid, enforceable contract.  Steelscape breached Bridgespan 5/25 when

21  it altered the terms of the compensation contract during a particularly profitable year.

22      6.12    Representative Plaintiffs and the Class Members worked through what was

23  known as the completion of Bridgespan 5/25 in FY 18.  These employees were actively

24  employed and eligible to receive the additional contracted performance incentive

25  compensation on or about September 2018.  Representative Plaintiffs and the Class

26

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 18

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1  Members received additional compensation, but at a rate far lower than they would have

2  earned if Steelscape honored the original compensation plan.

3        6.13    In the alternative, Bridgespan 5/25 is an implied or unilateral contract.

4  Defendants did not reserve the right to alter or revoke the compensation plan prior to

5  acceptance and performance by the employees under Bridgespan 5/25.  Steelscape

6  breached Bridgespan 5/25 when it altered the terms of the compensation contract during

7  particularly profitable years.

8        6.14    As a result of Defendants' breaches of contract, Representative Plaintiffs

9  Mendez, Kimball, Gould and the Class Members suffered damages in an amount to be

10  proven at the time of trial.

11  **D.**      **FOURTH CAUSE OF ACTION – Breach of Promise of Good Faith and Fair**

12  **Dealing**

       **(On behalf of Representative Plaintiffs in their individual capacities and on**

13  **behalf of the Class Members.)**

14        6.15    Plaintiffs realleges paragraphs 1.1 through 6.14 of the Complaint and hereby

15  incorporates the same by reference.

16        6.16    Representative Plaintiff Mendez, Kimball, Gould and the Class Members

17  performed work for Defendants in good faith reliance on the compensation promised to

18  them under the Bridgespan 5/25 plan.  When designing and implementing this performance

19  incentive pay program, Steelscape was bound by a covenant of good faith and fair dealing.

20  This duty obligated Steelscape to avoid alteration of Bridgespan 5/25 to the detriment of

21  the Representative Plaintiffs and the Class Members.  Steelscape breached its promise or

22  duty of good faith and fair dealing when it unilaterally altered the terms of Bridgespan 5/25

23  in FY 17 and FY 18, to the financial detriment of Representative Plaintiffs and the Class

24  Members.

25        6.17    Steelscape initiated a unilateral change to Bridgespan 5/25 during a

26  particularly profitable year for the company.  Upon information and belief, there existed no

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 19

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1    emergency or hardship to necessitate the imposition of a cap or other reduction of the

2    performance incentive pay of the Representative Plaintiffs and the Class Members.  The

3    obligation of good faith and fair dealing did not require Representative Plaintiffs and the

4    Class Members to accept the unilateral alteration to Bridgespan 5/25.

5        6.18    As a result of Defendants' breach of the promise of good faith and fair

6    dealing, Representative Plaintiffs Mendez, Kimball, Gould and the Class Members suffered

7    damages in an amount to be proven at the time of trial.

8    **E.    FIFTH CAUSE OF ACTION – Promissory Estoppel**

9        **(On behalf of Representative Plaintiffs in their individual capacities and on
     behalf of the Class Members.)**

10

11       6.19    Plaintiffs realleges paragraphs 1.1 through 6.18 of the Complaint and hereby

12   incorporates the same by reference.

13       6.20    As alleged above, Bridgespan 5/25 constituted a non-discretionary, clear and

14   definite promise of performance incentive compensation.  Representative Plaintiffs

15   Mendez, Kimball, Gould and the Class Members performed under the full term of

16   Bridgespan 5/25, through the conclusion of FY 18.

17       6.21    When announcing and implementing Bridgespan 5/25, Steelscape made

18   promises and reassurances with regard to a defined formula for employee compensation,

19   upon which Representative Plaintiffs and the Class Members then reasonably relied.

20   Steelscape knew or should have known its employees then chose to either remain

21   employed, or forego other employment opportunities, in reliance on the opportunity for and

22   promise of payment under Bridgespan 5/25.  Representative Plaintiffs and the Class

23   Members justifiably relied on the promises of compensation under Bridgespan 5/25, and

24   did so to their detriment when Steelscape suddenly altered the fundamental terms of

25   Bridgespan 5/25.

26

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 20

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

6.22    Steelscape amended or otherwise cancelled the terms of Bridgespan 5/25 without a reserved right, privilege or justifiable legal excuse.  Steelscape's actions and omissions deprived Representative Plaintiffs and the Class Members of income owed to them under Bridgespan 5/25.  Substantial injustice has occurred and can only be avoided through the enforcement of the original terms of Bridgespan 5/25.

6.23    As a result of Defendants' unlawful actions, the doctrine of promissory estoppel is needed to remedy the suffering by Representative Plaintiffs Mendez, Kimball, Gould and the Class Members of financial damages, lost opportunity costs and other damages in an amount to be proven at the time of trial.

**F.    SIXTH CAUSE OF ACTION – Unjust Enrichment**
**(On behalf of Representative Plaintiffs in their individual capacities and on behalf of the Class Members.)**

6.24    Plaintiffs realleges paragraphs 1.1 through 6.23 of the Complaint and hereby incorporates the same by reference.

6.25    As alleged above, Steelscape announced and implemented Bridgespan 5/25 to incentivize and appease the workforce after announcing disappointing news about a 3% reduction of the 401k employer matching contribution.  Representative Plaintiff Mendez, Kimball, Gould and the Class Members then performed under the announced terms and reassurances of the Bridgespan 5/25 compensation plan.

6.26    Steelscape received the benefits of hard work by Representative Plaintiffs and the Class Members.  When Defendants recognized they were enjoying a particularly profitable year and faced a liability for a substantial payout of performance incentive pay to the employees, Steelscape then suddenly changed the terms of Bridgespan 5/25 for its benefit and to the detriment of Representative Plaintiffs and the Class Members.  As a result of the unilateral change of terms to Bridgespan 5/25, Steelscape reaped the profits and capped or otherwise altered the additional performance compensation at a lower rate.

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 21

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1    The change or cancellation of terms to Bridgespan 5/25 is unjust and caused harm to the

2    Representative Plaintiffs and the Class Members.

3        6.27    Allowing Steelscape to keep the performance incentive compensation that

4    was otherwise owed under Bridgespan 5/25 is unjust and inequitable.  The only method to

5    cure this inequity is to require Steelscape to provide all compensation owed to

6    Representative Plaintiffs and the Class Members under the original terms of Bridgespan

7    5/25.

8        6.28    As a result of Defendants' unjust and wrongful retention of performance

9    incentive compensation owed to the employees, the doctrine of unjust enrichment

10   necessitates that Representative Plaintiffs Mendez, Kimball, Gould and the Class Members

11   be compensated for their financial damages, lost opportunity costs and other damages in an

12   amount to be proven at the time of trial.

13

14                    **VII.   PRAYER FOR RELIEF**

15       **WHEREFORE** Representative Plaintiffs pray for relief as follows:

16       A.    Approval and certification of this matter as a Class Action;

17       B.    Appointment of Frank "Joe" Mendez, Donald Max Kimball and Sia Gould

18   as representatives of the Class Members;

19       C.    That the undersigned counsel for Representative Plaintiffs be appointed as

20   Class Counsel;

21       D.    Judgment awarding Representative Plaintiffs and the Class Members all

22   compensatory damages for direct and consequential losses of compensation, in an amount

23   to be proven at the time of trial;

24       E.    Judgment awarding Representative Plaintiffs and the Class Members

25   damages and other equitable relief, in an amount to be proven at the time of trial;

26

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 22

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

1    F.    Judgment awarding Representative Plaintiffs and the Class Members

2  exemplary damages and/or statutory penalties permitted by law;

3    G.    Pre- and post-judgment interest in an amount to be proven after trial;

4    H.    Compensation as tax relief associated with any recovery on claims herein;

5    I.    Reasonable attorneys' fees and costs;

6    J.    Injunctive relief; and

7    K.    Whatever further and additional relief this Court shall deem just and

8  equitable.

9    DATED this 28th day of January, 2020.

10    **HKM EMPLOYMENT ATTORNEYS LLP**

11

12    */s/ Brian L. Dolman*
     Donald W. Heyrich, WSBA No. 23091
13    Erin S. Norgaard, WSBA No. 32789
     Brian L. Dolman, WSBA No. 32365
14    600 Stewart Street, Suite 901
     Seattle, WA 98101
15    Telephone: (206) 838-2504
     Email: dheyrich@hkm.com
16        enorgaard@hkm.com
        bdolman@hkm.com
17    *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 23

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504

# CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the following attorneys of record.

Patrick M. Madden
Ryan D. Redekopp
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
*Patrick.madden@klgates.com*
*Ryan.redekopp@klgates.com*

DATED this 29th day of January, 2020.

*/s/ Angela Tracy*_____
Angela Tracy, Legal Assistant

AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF **(CLASS ACTION)**
(3:19-cv-05691-RBL) – 24

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
Tel: (206) 838-2504